* * * * * * * * * * * RULING ON MOTION TO DISMISS APPEAL
Defendants have filed a motion with the Industrial Commission to dismiss plaintiff's appeal with prejudice for failure to prosecute the appeal. Defendants contend, and the Full Commission finds as fact, that plaintiff filed an appeal from the March 1, 2005, opinion and award of Chief Deputy Commissioner Gheen on or about March 11, 2005; that the transcript of evidence was submitted to the parties on or about May 16, 2005; that plaintiff did not file either a Form 44 or a supporting brief within twenty-five days of May 16, 2005 or at any time thereafter; and that no request or stipulation for an extension of time to file a Form 44 or supporting brief has been filed with the Commission by plaintiff. The Full Commission further finds as fact that plaintiff is pursuing the present appeal pro se.
In the present action, the Full Commission concludes as a matter of law that plaintiff properly applied for review of Chief Deputy Commissioner Gheen's Opinion and Award in accordance with N.C. Gen. Stat. § 97-85. The Full Commission further concludes that, although plaintiff has failed to satisfy the requirements of Workers' Comp. Rules 701(2) and (3) that plaintiff state the grounds of her appeal with particularity within twenty-five days after receiving the transcript of evidence in the present action, the interest of justice obligates the Commission, in its discretion, to waive the requirements of Rules 701(2) and (3) pursuant to Workers' Comp. Rule 801 in light of plaintiff's status as a pro se appellant. The Full Commission concludes that plaintiff has met all statutory requirements to pursue her appeal, and that any failure by plaintiff to satisfy the additional requirements set forth in the Commission's worker's compensation rules is excused pursuant to those same rules. It follows that dismissal of plaintiff's appeal in the present action pursuant to Workers' Comp. Rule 613(1)(c) would be inappropriate.
The Full Commission concludes that the holding of the Court of Appeals in Roberts v. Wal-Mart, ___ N.C. App. ___,619 S.E.2d 907 (2005), is not dispositive to the present matter. InRoberts, the Court held that the Commission was bound by its own rules and, accordingly, a plaintiff's failure to state the grounds for her appeal with particularity in violation of the non-discretionary language of Workers' Comp. Rules 701(2) and (3) obligated the Commission to dismiss the appeal. See also, Adamsv. M.A. Hanna Co., 166 N.C.App. 619, 603 S.E.2d 402 (2004) (holding that the Industrial Commission must follow its own workers' compensation rules). However, neither Roberts norAdams involved the express invocation by the Full Commission of Workers' Comp. Rule 801, which provides for the waiver of any workers' compensation rule in the interests of justice. Because the Commission's waiver of the requirements of Workers' Comp. Rules 701(2) and (3) in the present action is consistent with and in accordance with Workers' Comp. Rule 801, the obligation recognized in Roberts and Adams that the Commission follow its own rules has been fulfilled.
For the reasons stated above, the Full Commission hereby denies defendants' motion to dismiss plaintiff's appeal with prejudice.
 * * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Chief Deputy Commissioner Gheen. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission hereby reverses the Chief Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the plaintiff and defendant-employer at all relevant times.
3. The carrier on the risk is North Carolina Insurance Guaranty Association, the successor in interest to Reliance Insurance Company.
4. Plaintiff's average weekly wage is $438.40, producing a compensation rate of $292.27.
5. The date of the injury is November 29, 1999.
6. The following documents were admitted into evidence as:
a. Stipulated Exhibit 1: Pretrial Agreement.
b. Stipulated Exhibit 2: Medical Records.
c. Stipulated Exhibit 3: Accident Report.
7. The issue before the Commission is whether plaintiff's compensable injury by accident to her hand resulted in an injury to her neck and back.
 * * * * * * * * * * *
Based upon all the competent evidence of record, and all reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was working for Carolina Brush on or about November 29, 1999, when her right hand was crushed for two to two and a half minutes between two pieces of equipment. The focus of impact was to her thumb and the base of her index finger. Plaintiff experienced immediate pain in her index finger with some pain to her elbow.
2. Plaintiff was initially treated at Gaston Rehabilitation and Hand Center. She presented with symptoms of pain in the hand and wrist and numbness on the lateral aspect of the forearm. She participated in three weeks of physical therapy. As of December 20, 1999, she was only having some loss of sensation in her index finger, and as of December 22, 1999, her grip strength in her right hand passed the grip strength of her left hand. Plaintiff's authorized treating physician returned her to regular duty work.
3. On December 22, 1999, Plaintiff sought treatment with Dr. Warren Burrows with the Carolina Hand Center. Dr. Burrows's records indicate that plaintiff was not experiencing any pain, but was experiencing numbness along the course of the dorsum of the right index finger. Dr. Burrows documented that plaintiff had a full and normal range of motion with some mild swelling at the base of the index finger and decreased sensation along the index finger. Dr. Burrows diagnosed a contusion to the right hand with a contusion to the sensory branch of the radial nerve of the right hand. No treatment was recommended and he was of the opinion that her symptoms would resolve over the next two to three months. Dr. Burrows certified plaintiff for regular duty.
4. Plaintiff again sought treatment for her finger on September 25, 2000, with Dr. Burrows but was treated by Dr. Steven B. Sanford. She reported a six-month history of right hand numbness after heavy usage and difficulty dropping items with her right hand. Dr. Sanford felt that plaintiff had signs and symptoms consistent with right carpal tunnel syndrome. She was prescribed medications for inflammation and irritation. Dr. Sanford opined that plaintiff's symptoms were unrelated to her November 29, 1999 injury.
5. On October 9, 2001, plaintiff was seen by her family physician at Carolina Family Care. She presented with a knot on her right wrist and a history of right wrist pain on and off for two years with no swelling but occasional numbness. Plaintiff was prescribed a wrist brace and prescription medication.
6. Plaintiff returned to Dr. Burrows on January 23, 2002. She expressed symptoms of increasing numbness of her right hand, swelling in the dorsum of the hand, and a pulling, cramping sensation. The numbness was described as occurring throughout the day in her fingers and she was not able to hold any objects with any force without developing either numbness or pain. Dr. Burrows tentatively diagnosed plaintiff with right-sided carpal tunnel syndrome that might be work related. Plaintiff's conduction studies were normal, and Dr. Burrows performed injections that provided minimal relief. Celebrex and a wrist splint were continued.
7. On April 2, 2002, plaintiff sought treatment from Dr. Eric Emerson of the Southeastern Hand Center. Dr. Emerson's history notes plaintiff had some initial problems and then a period where she was fairly asymptomatic for one year. Plaintiff described current occasional sensation of numbness involving the right thumb, the right middle finger and right ring finger. Dr. Emerson noted that plaintiff's symptoms were consistent with a nerve compression. He recommended additional proximal arm testing. He opined that: "If indeed, she has a more proximal compression of the nerve, I do not feel that this would be related to the injury she suffered in November 1999."
8. Dr. Emerson ordered nerve conduction testing. In conjunction with this testing, plaintiff reported a history of somewhat continuous symptoms that were mild until seven or eight months previously when the symptoms spontaneously worsened. The electrodiagnostic testing was normal, and there was no electrodiagnostic evidence to suggest a median neuropathy either at the wrist or more proximally in the forearm or arm. There were also no findings to suggest an ulnar or radial mono-neuropathy or plexopathy.
9. Based upon the normal objective tests, Dr. Emerson found no evidence of median nerve compression or ulnar nerve compression. Surgery was not indicated and pain management or a physiatrist was recommended.
10. On August 2, 2002, plaintiff sought treatment from Dr. James Boatright of the Miller Orthopedic Clinic. Plaintiff complained of numbness to her hand, especially after activity. Dr. Boatright felt that she had either probable carpal tunnel syndrome or possible chronic compartment syndrome. He requested additional testing.
11. On October 30, 2002, plaintiff initiated treatment with Dr. Kenneth Dols of Carolina Orthopedic. Plaintiff reported a history of some numbness after her work injury, but also that "over the past two weeks she is starting to experience almost excruciating pain from the hand to the shoulder." Dr. Dols obtained x-rays that seemed to indicate foraminal encroachment at C5-C6. Dr. Dols prescribed a cervical collar and removed her from work. He diagnosed probable right carpal tunnel syndrome and questioned whether plaintiff had a "double crush syndrome" with cervical radiculopathy. Ultimately, Dr. Dols felt that plaintiff needed another neurologic consultation and a possible repeat electrodiagnostic testing.
12. On December 3, 2002, plaintiff consulted with Dr. Albis Acosta. She presented with bilateral hand numbness (right greater than left) and hand pain. Plaintiff stated that about three years prior she caught her hand in a machine at work and has since experienced significant right forearm pain and shoulder pain and more recently has developed bilateral upper extremity burning, stinging, and numbness. Plaintiff was noted to have decreased pinprick in the whole left upper extremity when compared to the right. Dr. Acosta obtained an MRI of her neck that showed chronic appearing degenerative disk disease with eccentric disc bulging and spondylitic ridging to the right side at C5-6 that did appear to produce some foraminal narrowing on the right. Plaintiff underwent more testing and injections.
13. Plaintiff next came under the care of Dr. Richard Greenberg of the Neuroscience Spine Center of the Carolinas on June 9, 2003. Dr. Greenberg noted that plaintiff had caught her hand in a machine in 2000, and had radicular-type pain originating in the neck and shooting down the right arm into thumb and index finger. In his notes, Dr. Greenberg indicated plaintiff provided a history of neck and right extremity pain ever since her injury. Dr. Greenberg took plaintiff out of work beginning June 10, 2003, and recommended surgery.
14. On June 19, 2003, Dr. Greenberg performed a C5-C6 anterior cervical discectomy, fusion and internal fixation, as well as a decompression bilateral forminotomy. Subsequently plaintiff remained out of work until September 2, 2003, when she returned to half-time duty and then full duty as of October 2, 2003.
15. Plaintiff testified, and the Full Commission finds as fact based on the greater weight of the evidence, that plaintiff suffered numbness and swelling in her right hand and a burning sensation up to her neck and shoulders from the time of the compensable accident on November 29, 1999, until the June 19, 2003 surgery by Dr. Greenberg.
16. Dr. Greenberg's testimony establishes that plaintiff's cervical condition was spondylosis, a degenerative disease, which was aggravated by her work-related injury by accident on November 29, 1999. The following was posed to Dr. Greenberg on the issue of causation:
 Q: Doctor, assuming the Industrial Commission finds . . . that she was working at Carolina Brush and her hand became stuck in a machine while she was working and that she was trying to get her hand out once it was caught in there . . . do you have an opinion satisfactory to yourself and within a reasonable degree of medical certainty as to whether the injury you treated her for is the result of her accident at work?
 A: I would say this, that if she had that injury . . . and . . . from . . . roughly the time of the injury until when I operated if she was complaining of the neck pain, arm pain and so on then I think by history that accident was a contributor of her complains leading to the surgery and all the treatment thereafter.
 Q: It would be your opinion . . . that this accident which occurred at work when her hand became caught in the machine significantly aggravated the condition in her neck, would that be your opinion, such that she became symptomatic and required surgery?
A: Yes.
17. The Full Commission finds that the greater weight of the medical evidence of record indicates that plaintiff's pre-existing cervical condition was materially aggravated for the worse by her November 29, 1999, injury by accident, and that such injury caused plaintiff to sustain a period of temporary total disability from June 10, 2003, through September 2, 2003, and a period of temporary partial disability from September 2, 2003, through October 2, 2003. Greater weight is given to the opinions of Dr. Greenberg as opposed to Dr. Sanford and Dr. Emerson because Dr. Sanford and Dr. Emerson failed to discover and diagnose plaintiff's cervical condition and instead focused on plaintiff's hand injury alone.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained and injury by accident arising out of and in the course of her employment with defendant-employer on November 29, 1999, in which she injured her right hand and cervical spine. N.C. Gen. Stat. § 97-2(6).
2. The aggravation or exacerbation of a pre-existing condition that results in loss of wage earning capacity is compensable under the Workers' Compensation Act. Ruffin v. Compass GroupUSA, 150 N.C.App. 480, 563 S.E.2d 633 (2002); Smith v.Champion, Int'l., 134 N.C. App. 180, 517 S.E.2d 164 (1999). Based on the substantial and non-speculative expert medical testimony presented before the Commission by Dr. Greenberg, the Full Commission concludes that plaintiff's pre-existing cervical condition was materially aggravated for the worse by her November 29, 1999, injury by accident. Cf. Holley v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003).
3. Plaintiff is entitled to temporary total disability compensation at the weekly rate of $292.27 from June 10, 2003, through September 2, 2003. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to temporary partial disability compensation at the weekly rate of $146.13 from September 2, 2003, through October 2, 2003. N.C. Gen. Stat. § 97-30.
5. Plaintiff is entitled to the medical treatment necessary for the treatment of her right hand and cervical condition as reasonably required to effect a cure, give relief, or lessen the period of her disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay temporary total disability compensation to plaintiff at the weekly rate of $292.27 from June 10, 2003, through September 2, 2003. Because this amount has accrued, it shall be paid to the plaintiff in a lump sum.
2. Defendants shall pay temporary partial disability compensation to plaintiff at the weekly rate of $146.13 from September 2, 2003, through October 2, 2003. Because this amount has accrued, it shall be paid to the plaintiff in a lump sum.
3. Defendant shall pay for to the medical treatment necessary for the treatment of plaintiff's right hand and cervical condition as reasonably required to effect a cure, give relief, or lessen the period of her disability.
4. The defendants shall pay the costs.
This 6th day of October 2005.
 S/ _______________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/ _______________________ CHRISTOPHER SCOTT COMMISSIONER
DISSENTING:
 S/ _______________________ BUCK LATTIMORE CHAIRMAN